KORMANIK, Gdn., Appellant,

v.

COOPER et al., Appellees.

Kormanik, Gdn., Appellant,

v.

Baxter et al., Appellees.

Kormanik, Gdn.,

v.

Cooper et al., Appellees;

Ohio McGivney Pooled Special Needs Trust, Appellant.

Kormanik, Gdn.,

v.

Baxter et al., Appellees;

Ohio McGivney Pooled Special Needs Trust, Appellant.

[Cite as *Kormanik v. Cooper*, 195 Ohio App.3d 790, 2011-Ohio-5617.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 11AP–74, 11AP–75, 11AP–76, and 11AP–77.

Decided Nov. 1, 2011.

Michael L. Miller, for appellant Paul Kormanik.

Browning, Meyer & Ball Co., L.P.A., and Richard F. Meyer, for appellant Ohio McGivney Pooled Special Needs Trust.

Michael DeWine, Attorney General, and Henry G. Appel, for appellees Ohio Department of Job and Family Services and state of Ohio.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Paul S. Kormanik, as the guardian for the estates of Violet Baxter and David Cooper, and defendant-appellant, the Ohio McGivney Pooled Special Needs Trust ("McGivney"), filed these consolidated appeals. Kormanik and McGivney appeal from judgments of the Franklin County Court of Common Pleas, Probate Division, that dismissed defendants-appellees, the state of Ohio and the Ohio Department of Job and Family Services (collectively, the "state defendants"), as parties. For the following reasons, we affirm the probate court's judgment regarding Baxter and we dismiss the appeals from the judgment regarding Cooper.

{¶ 2} The probate court appointed Kormanik guardian of Baxter, who is 83 years old. Subsequently, Kormanik filed a petition asking the probate court to "create a 42 U.S.C. 1396p(d)(4)(C) qualifying pooled special-needs trust for the benefit of the ward, Violet Baxter, that maintains the Medicaid eligibility for the ward." [1] The petition named as defendants Baxter, the state of Ohio, the Ohio Department of Job and Family Services ("ODJFS"), and McGivney.

---

1. Kormanik also filed a petition requesting the creation of a pooled trust for Cooper's benefit. During the course of these proceedings, Cooper passed away. As we discuss below, Cooper's

{¶ 3} Kormanik included the state of Ohio and ODJFS as defendants due to their statutory duty to "oversee[ ] Medicaid benefits and eligibility." Kormanik later amended the petition to join the Franklin County Department of Job and Family Services ("FCDJFS") as a defendant. Kormanik added FCDJFS because it would be responsible for making the initial determination regarding Baxter's Medicaid eligibility once she applied for benefits.

{¶ 4} Instead of filing an answer, the state defendants moved for dismissal under Civ.R. 12(B)(1) and (6). In their motion, the state defendants asserted that Kormanik included them as defendants "solely so [the probate court could] affirmatively determine whether Ms. Baxter is eligible for Medicaid." However, as the state defendants pointed out, the probate court did not possess jurisdiction to decide Medicaid eligibility. Because the court lacked authority to rule on Baxter's eligibility for Medicaid, the state defendants asserted that they had "no significant role" to play in the proceedings and should be dismissed.

{¶ 5} In response, Kormanik argued that federal and state statutes invested the probate court with jurisdiction to establish a pooled trust. According to Kormanik, the probate court could not establish a pooled trust without declaring that the trust complied with the applicable statutory requirements and that any assets transferred into the trust could not be counted as resources for the purpose of deciding Medicaid eligibility. Kormanik reasoned that "if the [probate] court create[d] a pooled trust and declare[d] it to fit within the parameters of [federal and state statute], the State [would] be estopped from later arguing the creation of the trust and the transfer of assets into the trust was an invalid or disqualifying transfer." Due to the estoppel effect of the declaration, Kormanik argued that the state defendants had an interest to protect and should remain parties to the litigation.

{¶ 6} The probate court agreed with the state defendants' argument, and it issued a judgment granting their motion to dismiss. Kormanik and McGivney appealed the judgment to this court. After reviewing the matter, we concluded that the dismissal of the state defendants did not completely resolve the action, because the probate court had yet to decide whether to grant Kormanik's petition and create the pooled trust. *Kormanik v. Cooper*, 190 Ohio App.3d 184, 2010-Ohio-4745, 941 N.E.2d 110, ¶ 9. As the judgment neither disposed of all issues nor contained Civ.R. 54(B) language, it did not constitute a final, appealable order. Id. at ¶ 12. Consequently, we dismissed the appeal.

{¶ 7} Immediately before Kormanik and McGivney appealed the probate court's judgment, McGivney filed a motion for reconsideration. The probate

---

death has rendered the petition relating to him moot. Consequently, we set forth only the procedural history of Baxter's petition.

court held that motion in abeyance during the pendency of the appeal. Once we dismissed the appeal, Kormanik also filed a motion for reconsideration.

{¶ 8} The probate court granted Kormanik and McGivney's motions for reconsideration and reanalyzed whether dismissal of the state defendants was appropriate. The reconsideration, however, did not produce a different result. In a judgment issued December 27, 2010, the probate court again dismissed the state defendants from the proceedings.

{¶ 9} Both Kormanik and McGivney now appeal the December 27, 2010 judgment. Kormanik assigns the following errors:

1. The trial court erred in dismissing the State of Ohio and the Ohio Department of Jobs [sic] and Family Services as defendants herein in that the Probate Court has jurisdiction over all beneficiaries in the creation and the construction of inter vivos trusts including those created pursuant to 42 U.S.C. 1396p(d)(4)(C).

2. The trial court erred in dismissing the State of Ohio and the Ohio Department of Jobs [sic] and Family Services as defendants herein in that they are necessary parties for the creation and construction of the trust.

3. The trial court erred in dismissing the State of Ohio and the Ohio Department of Jobs [sic] and Family Services as defendants herein in that the Probate Court has plenary power pursuant to R.C. 2101.24(C) to [dispose] fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code.

{¶ 10} And McGivney assigns the following errors:

1. The trial court erred in finding that the defendants, State of Ohio and Ohio Department of Job and Family Services, were not necessary parties to the action.

2. The trial court erred in finding that the plaintiff was requesting determination of Medicaid eligibility.

3. The trial court erred in finding that it is not required under the Ohio Revised Code to make a finding pursuant to R.C. 5111.151(F)(3).

{¶ 11} Before addressing the merits of appellants' arguments, we must address the effect of Cooper's death on the viability of the appeals related to him. Cooper passed away on April 18, 2011. Soon thereafter, the state defendants filed a suggestion of death, and in it, they asserted that Cooper's death rendered moot Kormanik's request to use Cooper's assets to fund a special-needs pooled trust. We agree.

{¶ 12} Actions are moot when "'they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations.'"

*Ridgeway v. State Med. Bd.*, 10th Dist. No. 06AP–1197, 2007-Ohio-5657, 2007 WL 3072635, ¶ 11, quoting *Lingo v. Ohio Cent. RR., Inc.*, 10th Dist. No. 05AP–206, 2006-Ohio-2268, 2006 WL 1230679, ¶ 20. Ohio courts exercise judicial restraint in cases that do not present actual controversies. *Tschantz v. Ferguson* (1991), 57 Ohio St.3d 131, 133, 566 N.E.2d 655; *Fortner v. Thomas* (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371. If while an action is pending, an event occurs that renders it impossible for a court to grant any effectual relief, the court will generally dismiss the action. *Tschantz* at 133, quoting *Miner v. Witt* (1910), 82 Ohio St. 237, 92 N.E. 21, syllabus.

{¶ 13} Here, Cooper's death eliminates any need to place his assets in trust so that he can qualify for Medicaid. Accordingly, the underlying petition, as well as this appeal, are moot. We thus dismiss the two appeals related to him.

{¶ 14} Resolution of the remaining appeals requires an examination of the Medicaid program, and particularly, the role of pooled special-needs trusts in the determination of Medicaid eligibility. Congress established the Medicaid program in 1965 by adding Title XIX to the Social Security Act. *Arkansas Dept. of Health & Human Servs. v. Ahlborn* (2006), 547 U.S. 268, 275, 126 S.Ct. 1752, 164 L.Ed.2d 459. Through the Medicaid program, the federal government provides financial assistance to states that reimburse needy persons for the cost of medical care. *Pharmaceutical Research & Mfrs. v. Walsh* (2003), 538 U.S. 644, 650, 123 S.Ct. 1855, 155 L.Ed.2d 889; *Wisconsin Dept. of Health & Family Servs. v. Blumer* (2002), 534 U.S. 473, 479, 122 S.Ct. 962, 151 L.Ed.2d 935. In order to participate in the Medicaid program, a state must adopt a plan for medical assistance approved by the secretary of Health and Human Services ("secretary"). Section 1396a(b), Title 42, U.S.Code; *Pharmaceutical Research & Mfrs.* at 650. The plan must contain reasonable standards for determining eligibility for medical assistance within the boundaries set by the Medicaid Act, Section 1396, Title 42, U.S.Code et seq., and its implementing regulations. Section 1396a(a)(17), Title 42, U.S.Code; *Blumer* at 479. Additionally, the plan must comply with Section 1396p(d), Title 42, U.S.Code, the section of the Medicaid Act that sets forth rules concerning trusts created with an individual's assets. Section 1396a(a)(18), Title 42, U.S.Code.

{¶ 15} To be financially eligible for Medicaid assistance, a person must have income and resources below a threshold set by the secretary. Section 1396a(a)(17), Title 42, U.S.Code. As a general rule, a person's resources include assets placed in a trust, and thus, a state must consider trust assets in determining whether the person is eligible for Medicaid. Section 1396p(d)(3), Title 42, U.S.Code; *Wong v. Doar* (C.A.2, 2009), 571 F.3d 247, 252; *Keith v. Rizzuto* (C.A.10, 2000), 212 F.3d 1190, 1193. However, Congress provided an

exception to this general rule. The rules established in Section 1396p(d)(3) do not apply to the type of trusts, commonly known as special-needs trusts, described in Section 1396p(d)(4). Section 1396p(d)(1), Title 42, U.S.Code (making the rules of Section 1396p(d)(3) "subject to" Section 1396p(d)(4), which precludes application of the rules to special-needs trusts); *Wong* at 252.

{¶ 16} One of these special-needs trusts is called a pooled trust. *Lewis v. Alexander* (E.D.Pa.2011), 276 F.R.D. 421 (" 'A "pooled trust" is a special arrangement with a non-profit organization that serves as trustee to manage assets belonging to many disabled individuals, with investments being pooled, but with separate trust "accounts" being maintained for each disabled individual' "). Pursuant to Section 1396p(d)(4)(C), a pooled trust must meet the following requirements:

(i) The trust is established and managed by a nonprofit association.

(ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.

(iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1382c(a)(3) of this title) by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.

(iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter.

{¶ 17} Pooled trusts enable disabled persons to combine trust accounts, thus reducing management fees. *Lewis.* Additionally, the nonprofit associations that manage pooled trusts can use funds left in a beneficiary's account after death for the benefit of other pooled-trust beneficiaries. Id.

{¶ 18} Having examined the applicable federal Medicaid provisions, we now turn to Ohio law. Ohio participates in the Medicaid program. *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, 867 N.E.2d 400, ¶ 2. Thus, Ohio has adopted a plan, approved by the secretary, which includes rules for determining a person's eligibility for Medicaid. See R.C. 5111.01 et seq.; Ohio Adm.Code 5101:1–39 et seq. (setting forth eligibility requirements for the aged, blind, and disabled). Ohio's plan designates ODJFS as the sole state agency to supervise the administration of the Medicaid program. R.C. 5111.01. Generally, the county department of job and family services, which in this case is FCDJFS, initially determines whether an applicant is eligible for Medicaid. R.C. 5111.012(A).

{¶ 19} Upon receipt of a Medicaid application, FCDJFS must conduct a resource assessment to determine whether the applicant or recipient's aggregate resources exceed the "resource limit." Ohio Adm.Code 5101:1–39–05(C)(1). Ohio Adm.Code 5101:1–39–05(B)(11) defines "resource limit" as the "maximum combined value of all resources an individual can have an ownership interest in and still qualify for [M]edicaid." For a person, the resource limit is $1,500. Ohio Adm.Code 5101:1–39–05(B)(11)(a).

{¶ 20} A trust's assets may or may not be a countable resource. R.C. 5111.151(C); Ohio Adm.Code 5101:1–39–27.1. See also Ohio Adm.Code 5101:1–39–05(B)(3) (defining "countable resources" as "those resources remaining after all exemptions have been applied"). If an applicant or recipient is a beneficiary of a trust, FCDJFS must first determine what type of trust it is. R.C. 5111.151(C); *Pack v. Osborn*, 117 Ohio St.3d 14, 2008-Ohio-90, 881 N.E.2d 237, ¶ 9. The nature of the trust determines whether its assets are available resources in determining whether the applicant or recipient's resources exceed the maximum limit for Medicaid eligibility. Id. After categorizing the trust, FCDJFS must apply the appropriate provision of R.C. 5111.151 and Ohio Adm.Code 5101:1–39–27.1 to determine whether the trust's assets are countable resources. R.C. 5111.151(C).

{¶ 21} Pooled trusts are one of the five types of trusts recognized in Ohio Adm.Code 5101:1–39–27.1. A trust qualifies as a pooled trust only if

(i) The trust contains the assets of an individual of any age who is disabled as defined in rule 5101:1–39–03 of the Administrative Code.

(ii) A separate account is maintained for each beneficiary of the trust but, for purposes of investment and management of funds, the trust pools the funds in these accounts.

(iii) Accounts in the trust are established by the individual, the individual's parent, grandparent, or legal guardian, or a court solely for the benefit of individuals who are disabled.

(iv) To the extent that any amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the state the amount remaining in the account equal to the total amount of medical assistance paid on behalf of the beneficiary. To meet this requirement, the trust must include a provision specifically providing for such payment.

Ohio Adm.Code 5101:1–39–27.1(C)(3)(c). See also R.C. 5111.151(F)(3)(a). The principal in or income from a pooled trust is "exempt from being counted as a resource by a county department of job and family services." R.C. 5111.151(F). See also Ohio Adm.Code 5101:1–39–27.1(C)(3)(c) ("Pooled trusts are not countable resources").

{¶ 22} Here, Kormanik petitioned the court to open an account with McGivney, which manages a pooled trust on Baxter's behalf. In response, the state defendants asked the probate court to dismiss for lack of subject-matter jurisdiction, pursuant to Civ.R. 12(B)(1), and for failure to state a claim upon which relief could be granted, pursuant to Civ.R. 12(B)(6).

{¶ 23} We will first address those assignments of error relating to the jurisdictional issue; namely, Kormanik's first and third assignments of error and McGivney's second and third assignments of error. A trial court has subject-matter jurisdiction over a case if it has the statutory or constitutional power to adjudicate the case. *Pratts v. Hurley,* 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. A motion to dismiss for lack of subject-matter jurisdiction raises a question of law, and thus, appellate courts review such a motion de novo. *Crosby–Edwards v. Ohio Bd. of Embalmers & Funeral Directors,* 175 Ohio App.3d 213, 2008-Ohio-762, 886 N.E.2d 251, ¶ 21.

{¶ 24} Probate courts are courts of limited jurisdiction and can exercise only the authority granted to them by statute or the Ohio Constitution. *In re Guardianship of Spangler,* 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, ¶ 46. R.C. 2101.24, which sets forth the general jurisdictional parameters of probate courts, grants probate courts the power "[t]o appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts." R.C. 2101.24(A)(1)(e). Additionally, R.C. 2111.50(A)(1) designates probate courts the superior guardians of the wards who are subject to their jurisdiction. In the superior-guardian role, probate courts have "all the powers that relate to the person and estate of the person and that he could exercise if present and not * * * under a disability," with some unrelated exceptions. R.C. 2111.50(B).

{¶ 25} Given this broad endowment of authority, we conclude that the probate court has jurisdiction to open a trust account with McGivney on Baxter's behalf. If Baxter were not a ward, she could have opened such an account herself. R.C. 5111.151(F)(3)(a)(iv); Ohio Adm.Code 5101:1–39–27.1(C)(3)(c)(iii). Because Baxter is the subject of a guardianship, the power to open the account accrues to the probate court.

{¶ 26} The state defendants do not contest the above analysis. Rather, they dispute the probate court's power to declare either that the trust account, once open, satisfies all the statutory requirements for a pooled trust or that any assets placed in the trust account are uncountable resources. Such determinations are integral to Medicaid eligibility, and citing *In re the Guardianship of Stowell* (Aug. 3, 1995), 10th Dist. No. 95AP–128, 1995 WL 458963, the state defendants argue that a probate court lacks jurisdiction to decide a person's

eligibility for Medicaid. In response, Kormanik and McGivney argue that a probate court has the authority to interpret a trust and that the probate court's interpretation must be used in the Medicaid-eligibility-review process. Kormanik and McGivney rely on *Pack* for that proposition.

{¶ 27} In *Pack*, 117 Ohio St.3d 14, 2008-Ohio-90, 881 N.E.2d 237, a trustee filed a declaratory judgment action requesting that the trial court declare the trust assets unavailable and not a countable resource for determining the trust beneficiary's eligibility for Medicaid benefits. Id. at ¶ 4. The state, however, maintained that the trial court lacked jurisdiction to grant the trustee's request because it amounted to bypassing the county department of job and family services' administrative Medicaid-eligibility review. Id. at ¶ 23. In rejecting this argument, the Supreme Court of Ohio held that Ohio statutes permitted the trial court to fulfill the trustee's request to interpret the trust and that the court's interpretation would be binding in the determination of the beneficiary's Medicaid eligibility.[2] Id.

{¶ 28} We hold that *Pack* has no application to this case. Unlike in *Pack*, here, no party has sought a declaratory judgment from the probate court regarding the nature of the trust or whether assets placed in the trust constituted uncountable resources. As the petition lacks a demand for such a declaration, we need not decide whether the probate court has the authority to grant such relief.

{¶ 29} Moreover, we reject Kormanik and McGivney's argument that the probate court must necessarily declare that a pooled-trust account that it opens on a ward's behalf complies with R.C. 5111.151(F)(3)(a) and Ohio Adm.Code 5101:1–39–27.1(C)(3)(c). While R.C. 5111.151(F)(3)(a)(iv) and Ohio Adm.Code 5101:1–39–27.1(C)(3)(c)(iii) permit a court to establish a pooled-trust account, they do not mandate that the court declare anything about the legality, nature, or effect of the trust account. Of course, in determining whether opening a pooled-trust account is in Baxter's best interest, the court may consider whether Baxter, McGivney, and the potential trust account would satisfy the requirements of R.C. 5111.151(F)(3)(a) and Ohio Adm.Code 5101:1–39–27.1(C)(3)(c). The probate court also may consider whether establishment of a pooled-trust account would improve Baxter's chances of qualifying for Medicaid. However, consideration of these issues does not entail issuance of a declaratory judgment.

{¶ 30} In sum, we conclude that the probate court possesses the jurisdiction to carry out the only relief Kormanik requested—the establishment of a trust

---

2. Specifically, the Supreme Court held that a trustee could bring a declaratory-judgment action to determine any question arising in the administration of the trust pursuant to R.C. 2721.05(C) and 5802.01(C). The court also noted that R.C. 5111.151(G)(4)(e), (g), and (h) sanctioned the trial court's involvement with respect to interpretation of the trust's terms in a Medicaid-eligibility context. None of these statutory provisions pertain to this case.

account with McGivney on Baxter's behalf. We thus overrule Kormanik's first and third assignments of error and McGivney's second and third assignments of error.

{¶ 31} Having determined the parameters of the probate court's jurisdiction, we turn to the issue whether the state defendants must remain parties to the proceedings. This issue is addressed by Kormanik's second assignment of error and McGivney's first assignment of error.

{¶ 32} Although the state defendants framed this part of their argument as a Civ.R. 12(B)(6) motion to dismiss, Civ.R. 21 more aptly addresses the substance of their challenge. Civ.R. 21 provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." This rule is the mechanism by which a court can correct the misjoinder of a party by dropping that party from an action. *EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.R.L.*, 2d Dist. No. 2009 CA 42, 2010-Ohio-28, 2010 WL 53151, ¶ 33. A court may find that a party is misjoined when that party has no legal interest in the litigation. Id.; *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, 868 N.E.2d 261, ¶ 11. See also *Letherer v. Alger Group, L.L.C.* (C.A.6, 2003), 328 F.3d 262, 267 (holding that a court may rely on Fed.R.Civ.P. 21 to delete parties that have no connection to an action); *Cohn v. KeySpan Corp.* (E.D.N.Y.2010), 713 F.Supp.2d 143, 152 (same).[3] Misjoinder also occurs when no relief is demanded from one or more of the parties joined as defendants. *EnQuip Technologies Group, Inc.* at ¶ 33. See also *Letherer* at 267; *Cohn* at 152, quoting *Barrundia v. New York* (S.D.N.Y.1988), No. 84 Civ. 6801, 1988 WL 96063 (finding misjoinder where " 'there is clearly no right or basis of relief from a party' "); *Moubry v. Kreb* (D.Minn.1999), 58 F.Supp.2d 1041, 1047 (holding that Fed.R.Civ.P. 21 is the proper vehicle for dismissing parties where " 'no relief is demanded from * * * or no claim of relief is stated against [them]' "). Appellate courts review a decision to drop a party pursuant to Civ.R. 21 under the abuse-of-discretion standard. *Darby v. A–Best Products Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, ¶ 12.

{¶ 33} We agree with the state defendants that they lack any real interest in the instant proceedings. The state defendants will develop an interest in whether Baxter is a beneficiary of a pooled-trust account only if Kormanik applies for Medicaid benefits on Baxter's behalf. Upon application, the state must determine whether the trust meets the requirements of R.C. 5111.151(F)(3)(a) and

---

3. Ohio's Civ.R. 21 is substantially similar to Fed.R.Civ.P. 21. Therefore, we look to federal case law for assistance in interpreting the Ohio rule. *Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, 852 N.E.2d 1176, ¶ 18.

Ohio Adm.Code 5101:1–39–27.1(C)(3)(c), thus making the trust assets unavailable for the purpose of determining Medicaid eligibility. Until that point, the existence and terms of the pooled-trust account contain no significance for the state defendants.

{¶ 34} We are not persuaded that the state defendants possess an interest in these proceedings because a properly constructed pooled trust requires the trust to pay the state the amount of medical assistance paid on behalf of the beneficiary if at the beneficiary's death, any amounts remain in the beneficiary's account. At best, the state's receipt of payment from Baxter's proposed trust account is a remote possibility, as it is contingent on (1) the probate court's opening a trust account for Baxter, (2) the transfer of assets into the trust account, (3) Kormanik's applying for Medicaid benefits on Baxter's behalf, (4) Baxter's being found eligible for Medicaid, (5) Baxter's receiving Medicaid benefits, and (6) assets remaining in Baxter's trust account upon her death. Additionally, the state defendants do not have *any* chance of benefiting from the trust unless and until the process reaches step five. If the state never pays out Medicaid benefits for Baxter, it cannot receive any reimbursement from the trust account. The state defendants' alleged beneficial interest, therefore, is so remote as to be nonexistent.

{¶ 35} Misjoinder is also evidenced by Kormanik's failure to demand any relief involving the state defendants. Whether the probate court grants or denies Kormanik's petition, the state defendants will remain unaffected. Only if Kormanik applies for Medicaid benefits for Baxter will the state be obliged to take any action.

{¶ 36} In sum, because the state defendants do not have an interest in the instant action and the relief sought does not involve them, the probate court did not abuse its discretion in dropping them as parties. Accordingly, we overrule Kormanik's second assignment of error and McGivney's first assignment of error.

{¶ 37} For the foregoing reasons, we dismiss as moot the appeals arising from the judgment relating to Cooper, i.e., appeal Nos. 11AP–74 and 11AP–76. Additionally, we overrule all of Kormanik's and McGivney's assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Probate Division, that relates to Baxter.

Appeals in 11AP–74 and 11AP–76
dismissed,
and judgments in 11AP–75 and 11AP–77
affirmed.

BRYANT, P.J., and TYACK, J., concur.